# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

DAMONE TAREE SAVAGE,

         Plaintiff,

         v.

OFC. MICHAEL ACQUINO, OFC. MARK
HAMILTON, OFC. MARK WHITE, OFC.
JEREMY CONNOLLY; MICHAEL REARDON,
1st Deputy Superintendent; DR.
HIELINBURGER, Doctor of Erie
County Medical Staff; and
GUADALUPE STABLER, nurse,

         Defendants.

**DECISION & ORDER**
13-CV-6376

## PRELIMINARY STATEMENT

Plaintiff Damone Savage ("plaintiff"), an individual previously detained at the Erie County Holding Center ("ECHC"), brings this pro se action against Buffalo Police Department ("BPD") officers and ECHC officials pursuant to 42 U.S.C. § 1983. See Docket # 7. In his Amended Complaint, plaintiff asserts: (1) a cause of action against Officers Michael Acquino and Mark Hamilton, alleging violations of his Fourth Amendment rights; (2) a cause of action against Officers Michael Acquino, Mark Hamilton, Mark White, and Jeremy Connolly, alleging violations of his Eighth Amendment rights; and (3) a cause of action against Dr. Edwin Heidelberger ("Heidelberger"), Nurse Guadalupe Stabler ("Stabler"), and Superintendent Michael Reardon ("Reardon"), alleging violations of his Eighth Amendment

rights.  Id.  Pursuant to the provisions of 28 U.S.C. § 636(c),
the parties have consented to the jurisdiction of this Court for
all dispositive matters, including trial.  See Docket # 46.

Currently pending before the Court are Reardon's motion for
judgment on the pleadings (Docket # 64), Stabler's motion for
judgment on the pleadings (Docket # 68), and Heidelberger's
motion to dismiss (Docket # 77).  Because plaintiff asserts the
same claim against all three defendants and because defendants
raise similar arguments, the Court will consider these motions
simultaneously.  Based on a review of the parties' submissions
and for the reasons discussed below, Reardon's motion for
judgment on the pleadings and Stabler's motion for judgment on
the pleadings are **granted**.  Heidelberger's motion to dismiss is
converted to a motion for summary judgment and is **denied without
prejudice** to renew.

## FACTUAL BACKGROUND

The following is based solely on the allegations contained
on the face of plaintiff's Amended Complaint.[1]  Docket # 7.  On

---

[1] The parties have submitted certain materials to the Court that
contain factual matter outside the scope of the Amended
Complaint.  See Docket ## 64-75, 77, 80, 82.  The Court has not
considered these materials in its resolution of defendants'
motions because, "when considering . . . a motion to dismiss a
complaint for failure to state a claim on which relief can be
granted, the district court is normally required to look only to
the allegations on the face of the complaint."  Roth v.

2

January 18, 2013, plaintiff was arrested by BPD officers for criminal possession of a firearm. Id. at 8. Plaintiff alleges that the arrest was unlawful, and asserts that BPD officers assaulted him and illegally searched his person during the course of the arrest. Id. at 6. As a result, plaintiff claims to have suffered permanent injuries to his neck, left shoulder, and left wrist, as well as other injuries to his eyes, face, head, legs, hips, and back. Id. at 6, 17.

Following his arrest, plaintiff was transported to ECHC, where he was examined by Stabler for intake processing. Id. at 17. According to his Amended Complaint, plaintiff arrived at ECHC with: unspecified injuries to his eyes, face, and head; his left shoulder in a sling; lacerations on his wrists that required stitches; and bruising on his knees, legs, hips, and back. Id. Plaintiff alleges that during his initial meeting with Stabler, she "refused to look into [his] complaints or review any of [his] wounds," instead telling him that he was experiencing "head trauma" and was "fine." Id. He further

_____

Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("[A] ruling on a motion to dismiss . . . is not an occasion for the court to make findings of fact."). For purposes of this rule, material falling within the scope of the complaint covers "any document incorporated in it by reference, annexed to it as an exhibit, or integral to it because it relies heavily upon its terms and effect," id. (internal quotations and citations omitted), including "documents plaintiffs had either in their possession or had knowledge of and upon which they relied in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quotations and citation omitted).

alleges that additional nurses declined to treat him over the course of his detention at ECHC, telling plaintiff that "only the Doctor could give [him] the medication [he] needed." Id. Accordingly, plaintiff claims, he made "many" requests to see a doctor,[2] including through the filing of grievances with the New York State Commission of Correction on February 15, 2013 and June 28, 2013. Id.

The issues in plaintiff's February 15, 2013 grievance mirror many of the issues raised in plaintiff's Amended Complaint – namely, that he requested to be examined by "Dr. H" multiple times, and that those requests were ignored. Id. at 19. Plaintiff specifically requested in his grievance that he "receive proper treatment," and be referred to "the 'doctor'" and not "the nurse," who claimed to be unable to assist him. Id. (emphasis in original). On the grievance form, ECHC staff indicated that "Deputy Brown" and "Nurse Debbie" informed plaintiff that he was scheduled to see the doctor later. Id. Below that, and in large capital letters in quotations, someone wrote "WAS NEVER CALLED TO SEE DOCTOR". Id. Plaintiff

---

[2] Plaintiff attached to his Amended Complaint six separate "sick call request" forms dated February 26, 2013; July 17, 2013; July 24, 2013; August 2, 2013; August 18, 2013: and November 3, 2013. Docket # 7 at 20-25. In the requests, plaintiff complained of "extreme headaches," "numbness in [his] wrists," and "constant pain." Id. He also reported blurred vision. Id. He made a request to see "Doctor H," but also noted in the forms that he was prescribed various medications and was examined by a neurologist. Id.

indicated that he did not accept the "informal resolution" of his grievance and appealed the decision. Id. On February 20, 2013, plaintiff received a memorandum formally denying his requests and barring further appeal from Sergeant A. Harris with the Erie County Sheriff's Office.[3] Id. at 17-18.

On April 4, 2013 and May 5, 2013, plaintiff alleges, he met with "the Doctor," who informed him that he needed shoulder surgery but would not receive it while at ECHC. Id. at 17. Plaintiff claims that, on June 13, 2013, he met with Reardon to discuss his release so that he could have the necessary surgery. Id. According to plaintiff, Reardon promised him that he would have the shoulder surgery while at ECHC, but never followed through on that promise. Id.

On June 28, 2013, plaintiff filed his second grievance, claiming that he was being denied proper medical treatment.[4]

---

[3] In full, the memorandum reads: "Mr. Savage, I cannot sustain your request for an examination by the doctor. Minimum standard 9 CRR-NY 7032.4(h) says that issues outside the authority of the chief administrative office are not grievable. The chief administrative officer cannot dictate who performs medical evaluations. Medical personnel make that determination. You may not appeal this issue to the chief administrative officer or the Citizen's Policy and Complaint Review Council." Docket # 7 at 18.

[4] Plaintiff did not attach his second grievance to his Amended Complaint, but, since it is plainly referenced in his Amended Complaint and qualifies as a document that he "had either in [his] possession or had knowledge of and upon which [he] relied in bringing suit," Chambers, 282 F.3d at 153, the Court considers it a part of plaintiff's pleading for purposes of the instant motions to dismiss. See Ellison v. Evans, 2013 WL

Docket # 66-7.   In that grievance, plaintiff noted that after filing three "sick slips" on June 2, June 15, and June 25, 2013, he had not been called for treatment.   Id.   He also wrote that he needed surgery and requested that he: receive stronger medication to cope with his "non-stop pain"; be examined by a neurologist for his headaches; and be given access to his medical records to make a motion for release for medical surgery.   Id.   ECHC staff noted on the grievance form that plaintiff's requests required action beyond the scope of their duties, and plaintiff indicated that he agreed to the informal resolution of his grievance.   Id.

These allegations form the basis of plaintiff's current claim against Reardon, Stabler, and Heidelberger.   On July 22, 2013, plaintiff filed his first Complaint, suing Stabler, Reardon, Heidelberger, and "Sheriff Timothy Howard" for denying him medical treatment in violation of his Eighth Amendment protection against cruel and unusual punishment.   Docket # 1 at

---

5863545, at *1 n.5 (S.D.N.Y. Oct. 31, 2013) (considering grievances submitted by defendant in motion to dismiss "[b]ecause these documents [we]re either explicitly referred to or incorporated by reference in plaintiff's complaint . . ."), aff'd sub nom., Fuller v. Evans, 586 F. App'x 825 (2d Cir. 2014), cert. denied, 135 S. Ct. 2807 (2015); see also, Sanchez v. Velez, 2009 WL 2252319, at *1 n.1 (S.D.N.Y. July 24, 2009) ("Because plaintiff's grievances are referenced in the complaint, the grievance documents are incorporated by reference and properly considered on a motion to dismiss." (citations omitted)).

7.   The Honorable Richard J. Arcara, United States District Judge, issued an Order on October 17, 2013, permitting, inter alia, plaintiff's claim for insufficient medical care against Stabler, Reardon, and Heidelberger to proceed and providing plaintiff an opportunity to amend his Complaint. See Docket # 5 at 5-6.   On November 8, 2013, plaintiff filed the current Amended Complaint, once again stating a cause of action against Stabler, Reardon, and Heidelberger for allegedly denying him proper medical care while he was held at ECHC.   Docket # 7 at 17.   For relief, plaintiff requests five million dollars, compensation for his medical bills from ECHC, and termination of "the Medical Staff" and Reardon.   Id.   The Honorable Frank P. Geraci, Jr., Chief United States District Judge, issued an Order on April 25, 2014 permitting plaintiff's claim against Stabler, Reardon, and Heidelberger to proceed.   Docket # 8.

On July 18, 2014, defendants Stabler and Reardon filed their Answers to the Amended Complaint, denying plaintiff's allegations regarding deliberate indifference to his serious medical needs and setting forth, among others, an affirmative defense that plaintiff failed to comply with the requirements of the Prison Litigation Reform Act ("PLRA").   Docket ## 13 at ¶ 18, 14 at ¶ 18.   Heidelberger filed his Answer to plaintiff's Amended Complaint on July 30, 2014, also denying plaintiff's allegations that he was deliberately indifferent to plaintiff's

serious medical need and raising an affirmative defense that plaintiff failed to comply with the requirements of the PLRA. Docket # 15 at ¶ 28.

## DISCUSSION

Relying on Rule 12(c) of the Federal Rules of Civil Procedure, Reardon and Stabler[5] now seek dismissal of the claim against them, arguing that: (1) plaintiff did not exhaust all administrative remedies available to him before bringing the instant action in accordance with the PLRA; and (2) plaintiff's Amended Complaint fails to state the elements of a claim against them for deliberate indifference to serious medical needs.[6]  See Docket ## 67 at 5-24, 71 at 5-24.  Heidelberger similarly seeks dismissal of the claim against him pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, adopting the arguments of Reardon and Stabler regarding exhaustion under the PLRA and asserting that: (1) plaintiff has failed to state a claim for deliberate indifference to medical need; and (2) plaintiff received adequate medical care while detained at ECHC.  See Docket # 77-17 at 1-8.

---

[5] Though Reardon and Stabler filed separate motions, they are nearly identical in form and substance.
[6] Defendants Reardon and Stabler additionally move for an Order from the Court staying this action pending resolution of the instant motions.  See Docket ## 67 at 24-25, 71 at 24-25.  On November 16, 2015, this Court issued an Order granting that request.  See Docket # 78.

## I. Legal Standard Applicable to Rule 12(c) Motions

"In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim of relief." Zucco v. Auto Zone, Inc., 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). In other words, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)).

In determining whether dismissal of the complaint is warranted, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). While "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-

movant," Sheppard, 18 F.3d at 150, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "[A]t a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quotations and citations omitted).

This standard applies to claims brought by pro se litigants, but, "[a]t the same time, . . . a 'document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Zucco, 800 F. Supp. 2d at 475-76 (quoting Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008)). "Nevertheless, all pleadings, pro se or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. (quoting Boykin, 521 F.3d at 214).

## II. Legal Standard Applicable to Eighth Amendment Claims of Deliberate Indifference Standard

Plaintiff alleges that Reardon, Stabler, and Heidelberger violated his Eighth Amendment rights by denying him proper

medical care while he was detained at ECHC. Under the Eighth
Amendment, which prohibits the infliction of cruel and unusual
punishment, inmates are protected from punishments that "involve
the unnecessary and wanton infliction of pain." Hathaway v.
Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Gregg v.
Georgia, 428 U.S. 153, 173 (1976)). This protection extends to
pretrial detainees held in state facilities through the
Fourteenth Amendment, see Tramell v. Keane, 338 F.3d 155, 161
(2d Cir. 2003) (citation omitted), and applies to any actions
that "transgress today's 'broad and idealistic concepts of
dignity, civilized standards, humanity, and decency.'" Hutto v.
Finney, 437 U.S. 678, 685 (1978) (quoting Estelle v. Gamble, 429
U.S. 97, 102 (1976)). Inadequate medical treatment qualifies as
cruel and unusual punishment proscribed by the Eighth Amendment
when an inmate can prove "that defendants' actions or omissions
amounted to 'deliberate indifference to a serious medical
need.'" Evan v. Manos, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004)
(quoting Estelle, 429 U.S. at 106).

"The deliberate indifference standard embodies both an
objective and a subjective prong." Hathaway, 37 F.3d at 66.
Objectively, an inmate must demonstrate "a deprivation that is .
. . sufficiently serious [such] that he was denied the minimal
civilized measure of life's necessities . . . ." Gaston v.
Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation

11

and citation omitted). Whether the deprivation of medical care is objectively serious requires inquiries into: (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the inadequacy of the medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). The first inquiry entails an assessment of whether prison officials acted reasonably in response to a medical condition; the second requires courts to examine the harm caused by any inadequate action based on, among other things, the seriousness of the medical condition. Id. There is no "precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," but courts in the Second Circuit consider a number of factors. Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). Medical need is sufficiently serious for constitutional purposes when, for example, "it presents a condition of urgency that may result in degeneration or extreme pain." See, e.g., Moran v. Livingston, 155 F. Supp. 3d 278, 288 (W.D.N.Y. 2016). While an inmate is not required "to demonstrate that he or she experiences pain that is at the limit of human ability to bear," Brock, 315 F.3d at 163, an unsupported "assertion of pain sensation alone . . . does not amount to a serious medical need under the Eighth Amendment." Evan, 336 F. Supp. 2d at 260 (internal quotation and citation omitted). Other factors indicative of serious medical need

include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation and citation omitted).

The subjective prong of the deliberate indifference standard requires that the charged official "act[ed] with a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." Id. (citation omitted); see also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Moran, 155 F. Supp. 3d at 288 ("More than medical malpractice is required to establish a constitutional violation."). The charged official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, the official must have acted with the "equivalent

13

of criminal recklessness." Moran, 155 F. Supp. 3d at 288 (citation omitted); see also Beaman v. Unger, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) ("To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." (citations omitted)). The official's behavior should be "repugnant to the conscience of mankind or incompatible with the evolving standards of decency that mark the progress of maturing society." Evan, 336 F. Supp. 2d at 261 (internal citations and quotations omitted). "[M]ere disagreement over the proper treatment," on the other hand, falls short of creating a constitutional claim. See, e.g., Chance, 143 F.3d at 703.

## III. Legal Standard Applicable to Claims of Failure to Exhaust Administrative Remedies under the PLRA

Relying on the PLRA, defendants first contend that plaintiff has failed to exhaust the administrative remedies available to him and, thus, argue that his Amended Complaint must be dismissed. See Docket ## 67 at 5-16, 71 at 5-17, 77-17 at 1. The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

14

exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has instructed that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Collins v. Gruen, 2014 WL 4923586, at *7 (W.D.N.Y. Sept. 30, 2014). Passed in an effort "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court," id. at 528, the PLRA should be applied "regardless of the type of facility in which [an inmate is] imprisoned." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006).

Under the PLRA's exhaustion requirement, an inmate must "utilize the available grievance procedures, regardless of whether the relief sought is offered through those procedures." Collins, 2014 WL 4923586, at *7. Accordingly, before bringing a case in federal court, an inmate "must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012). No special circumstances exist that relieve an inmate of their obligation to adhere to the PLRA's exhaustion requirement; an inmate's failure to exhaust the available administrative remedies is only excusable

where the remedies are, in fact, unavailable. See <u>Williams v.</u> <u>Correction Officer Priatno</u>, 829 F.3d 118, 123 (2d Cir., 2016) (noting that the Supreme Court's decision in <u>Ross v. Blake</u>, ___ U.S. ___, 136 S. Ct. 1850 (2016) abrogated the Second Circuit's special-circumstances exception for an inmate's failure to exhaust under the PLRA and "fram[ed] the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate"). Generally, there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."[7] <u>Ross</u>, 136 S. Ct. at 1859. "First, an administrative remedy may be unavailable when it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Second, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." <u>Williams</u>, 829 F.3d at 123-24 (internal quotations and citations omitted). "Third, an administrative remedy may be unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u>

---

[7] As explained by the Second Circuit in <u>Williams</u>, the list of circumstances where administrative remedies are effectively unavailable provided by the Supreme Court in <u>Ross</u> is not exhaustive. 829 F.3d at 123 n.2.

## IV. Analysis

**Exhaustion of Administrative Remedies:** Based on the legal standard set forth above, the PLRA applies to plaintiff's circumstances – he is alleging a series of constitutional violations that occurred while he was housed at ECHC, a county jail facility that had an administrative remedy "officially on the books." Ross, 136 S. Ct. at 1859. Moreover, "[b]ecause all of the motions filed by the [d]efendants relative to the issue of exhaustion are directed to the allegations in the Amended Complaint and Plaintiff's statements therein that he did not exhaust his administrative remedies, the Court will consider all such motions under Rule 12(b)(6)."[8] Collins, 2014 WL 4923586, at *7. Accordingly, as a preliminary matter, the Court must

---

[8] While an inmate is not required to specially plead exhaustion, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." Williams, 829 F.3d at 122 (2d Cir. July 12, 2016) (citing Jones v. Block, 549 U.S. 199, 215-16 (2007)); see also Gomez v. Westchester County, 2015 WL 1054902, at *5 (S.D.N.Y. Mar. 10, 2015) ("The Court may dismiss a complaint under Rule 12(b)(6) for failure to exhaust if non-exhaustion is clear from the face of the complaint." (citing Kasiem v. Swift, 756 F. Supp. 2d 570, 574 (S.D.N.Y. 2010))); McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003) ("If failure to exhaust is apparent from the face of the complaint, . . . a Rule 12(b)(6) motion is the proper vehicle."). Here, plaintiff's Amended Complaint plainly states that he did not appeal both of his grievances, meaning the failure to exhaust defense is properly adjudicated through the instant motions.

determine whether plaintiff satisfied the PLRA's exhaustion requirement prior to filing his Amended Complaint.

At ECHC, inmate complaints are resolved through a grievance program administered by the Erie County Sheriff's Office ("ECSO"). Docket # 66 at 3. Plaintiff was notified of the grievance program through an Inmate Handbook that he received when he first entered ECHC. Id. According to the program described in the handbook, an inmate can resolve issues through either an informal or formal process. Id.; see also Docket # 66-3 at 21-22. Under the informal system, inmates are instructed to make verbal or written complaints, which ECSO staff will attempt to resolve immediately. Id. If the grievance is not immediately resolved, it should be recorded on an "Inmate Request Slip" and "forwarded to the appropriate person or office for review and consideration . . . without undue delay." Id.

Under the formal procedure, an inmate with a complaint is instructed to fill out and submit a grievance form to the Housing Area Officer within five days of the incident giving rise to the complaint. Id. at 22. Once a grievance is filed, the inmate will receive a written answer from the Grievance Coordinator within five business days. Id. If the inmate is dissatisfied with the answer provided, they are instructed to appeal to the Superintendent within two business days, and the

Superintendent will review the grievance and issue a written answer within five business days. Id. If dissatisfied with the Superintendent's response, the inmate is instructed to appeal within three business days to the Commission of Corrections. Id. Thereafter, the Citizens' Policy and Complaint review council will make a determination and deliver it to the inmate within forty-five business days. Id.

As noted, plaintiff's Amended Complaint makes reference to two grievances – one filed on February 15, 2013 and one filed on June 28, 2013. Docket # 7 at 17. Plaintiff indicates specifically that he did not appeal the decisions issued in response to his grievances. Id. The documents attached to plaintiff's Amended Complaint, however, reveal that plaintiff appealed the decision on his February 15, 2013 grievance. Id. at 17-19. Indeed, a reading of plaintiff's Amended Complaint establishes that, after following the steps outlined in the administrative scheme for remedies, he received a memorandum from the ESCO informing him that he was barred from appealing his grievance any further. Id. at 18. It appears to the Court, therefore, that plaintiff exhausted the available administrative remedies outlined in the ESCO Inmate Handbook for the complaints in his grievance filed on February 15, 2013.

Plaintiff's June 28, 2013 grievance, however, presents a different story. On the grievance form, plaintiff explicitly

indicated that he "agree[d] to accept the informal resolution to [his] [g]rievance" without further appeal.   Docket # 66-7. Moreover, in his response to the instant motions, plaintiff acknowledges that he did not appeal the decision on his June 28, 2013 grievance and indicates that at least some of the requests made in that grievance were satisfied.   See Docket # 80 at 12. Even when "interpret[ing] [plaintiff's pro se Amended Complaint] to raise the strongest claims that it suggests," Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (citations omitted), the Court is unable to reasonably infer that plaintiff was unaware of his ability and duty to appeal his June 28, 2013 grievance before filing the instant suit in federal court.   The Amended Complaint contains language explicitly informing plaintiff of his obligation to follow the PLRA's exhaustion requirements and provide information related to his efforts to exhaust the available administrative remedies.[9]   Docket # 7 at 4. He honored this obligation with the grievance he filed on

---

[9] Under a section titled "Exhaustion of Administrative Remedies," the Amended Complaint states: "Note that according to 42 U.S.C. § 1997e(a), '[n]o actions shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prison[er] confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'   You must provide information about the extent of your efforts to grieve, appeal, or otherwise exhaust your administrative remedies, and you must attach copies of any decisions or other documents which indicate that you have exhausted your remedies for each claim you assert in this action."   Docket # 7 at 4 (emphasis in original).

February 15, 2013, but, inexplicably, did not with his later grievance. Taken together, these facts fail to give rise to an inference that the administrative remedy available to plaintiff was "a simple dead end," or that the process for obtaining relief was so complicated that "no ordinary prisoner [could] discern or navigate it," or that the ECHC administrators "thwart[ed] [plaintiff] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859. Accordingly, with respect to the issues raised in his June 28, 2013 grievance, I find that plaintiff failed to exhaust the administrative remedies available to him before filing his Amended Complaint.

The Court's inquiry, however, does not end here. Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, a party's failure to set forth an affirmative defense in responsive pleadings constitutes "waiver of that defense and its exclusion from the case." Boston v. Takos, 2002 WL 31663510, at *3 (W.D.N.Y. Oct. 4, 2002) (quoting U.S. For and on Behalf of Maritime Admin. v. Continental Illinois Nat. Bank and Trust Co. of Chicago, 889 F.2d 1248, 1253 (2d Cir. 1989). In the Second Circuit, exhaustion under the PLRA is an affirmative defense that must be raised in a responsive pleading, see id. (citing Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999)), which defendants Reardon, Stabler, and Heidelberger did. See Docket

## 13 at ¶ 18, 14 at ¶ 18,15 at ¶ 28.   Since defendants did not

waive their right to assert this defense, I find that plaintiff

is barred from raising the deliberate indifference claim

contained in his June 28, 2013 grievance in the instant suit.

See Jones v. Block, 549 U.S. 199, 223 (2007) (instructing courts

to evaluate exhaustion under the PLRA on a claim-by-claim

basis); see also Gomez v. Westchester County, 2015 WL 1054902,

at *6 (S.D.N.Y. Mar. 10, 2015) (reviewing exhaustion on a claim-

by-claim and grievance-by-grievance basis); Collins, 2014 WL

4923586, at *10 (dismissing case where plaintiff failed to "file

a grievance or an appeal with respect to either of his claims").

Moreover, because plaintiff only exhausted the issues

raised in his February 15, 2013 grievance, and because that

grievance makes no mention of plaintiff's current claims against

defendants Reardon and Stabler, the Court has no choice but to

dismiss plaintiff's Amended Complaint against them without

prejudice. See Boston, 2002 WL 31663510, at *3 (noting that, in

order to exhaust administrative remedies under the PLRA "as to

the acts allegedly committed by" defendants, an inmate must file

a grievance and appeal that grievance against each defendant).

Indeed, the conversation between plaintiff and Reardon, which is

the sole incident alleged in plaintiff's Amended Complaint

giving rise to a claim against Reardon, occurred four months

after the February 15, 2013 grievance.  See Docket # 7 at 17 ("I

then spoke to Sup. Int. Reardon on June 13, 2013 about my surgery or relase [sic] he said he would see to [i]t that I had said surgery while in facility I wrote him a reminder"). Similarly, while plaintiff asserts in his Amended Complaint that Stabler denied him appropriate medical care when he first entered ECHC, his February 15, 2013 grievance makes no mention of Stabler or the adequacy of the medical care he received upon admission to ECHC. Id. at 19. In fact, based on this Court's generous interpretation of plaintiff's pro se pleading, Heidelberger[10] is the only one of the three defendants subject to plaintiff's deliberate indifference claim mentioned in his exhausted grievance. See id. ("I have made many attempts to be seen by the medical 'Dr. H' of this facility . . . .") Accordingly, plaintiff's lawsuit against Reardon and Stabler, filed before the exhaustion of available administrative remedies, must be dismissed.

**Plaintiff's Remaining Eighth Amendment Claims for Deliberate Indifference to Medical Need:** Based on the above, the only remaining defendant subject to plaintiff's claim of deliberate indifference to his serious medical need is Heidelberger. Additionally, because plaintiff failed to exhaust the administrative remedies available to him with respect to the

---

[10] The Court infers that plaintiff was referring to Heidelberger when he requested to see "Dr. H" in his February 15, 2013 grievance. Docket # 7 at 19.

June 28, 2013 grievance, the only issues that are properly raised here are those contained in his February 15, 2013 grievance. See Gomez, 2015 WL 1054902, at *6 ("The Court thus concludes that although Gomez exhausted other dental claims, including his November claim regarding pain from an exposed cavity, he failed to exhaust any claim regarding dental care he received in August 2012, and is thus barred from asserting it here." (citation omitted)). To reiterate, that includes plaintiff's allegations that he made "many attempts" to be seen by Heidelberger for severe headaches and blurred vision, but that he was improperly denied treatment. Docket # 7 at 19. Plaintiff's additional complaints, including that Heidelberger denied him a necessary surgery while he was housed at ECHC, have not been properly exhausted under the PLRA and cannot be adjudicated in the instant litigation. The Court's only remaining task with respect to the claim against Heidelberger, therefore, is to determine whether he has sufficiently stated a claim for deliberate indifference based on the allegations contained on the face of his Amended Complaint.

In support of his motion to dismiss plaintiff's Amended Complaint, Heidelberger relies on, inter alia, plaintiff's statements at the April 28, 2015 Scheduling Conference with the Court (see Docket # 77-17 at 5); plaintiff's medical treatment before his admission into ECHC (see id.); plaintiff's referral

to an orthopedic surgeon at ECHC (see id. at 6); the results of
plaintiff's visit to "the ECMC Orthopedic Clinic" (see id. at
7); plaintiff's physical therapy (see id.); plaintiff's
examination by a neurologist (see id. at 7); an x-ray of
plaintiff's left shoulder (see id.); a report from plaintiff's
orthopedic surgeon, Dr. Michael Rauh, M.D., purportedly
indicating that plaintiff did not need shoulder surgery (see id.
at 8); and an affidavit from Heidelberger averring that he
provided plaintiff with reasonably appropriate medical care (see
Docket # 77-18). While these materials may be relevant to the
adjudication of the merits of plaintiff's claim, the Court finds
it improper to consider them in the context of a motion to
dismiss. The Federal Rules of Civil Procedure make clear that
this Court is barred from considering matters presented outside
the pleadings on a motion to dismiss without converting that
motion to one for summary judgment under Rule 56 and giving the
opposing party notice of the conversion and a reasonable
opportunity to submit the pertinent materials in response. See
Fed. R. Civ. P. 12(d); see also Hernandez v. Coffey, 582 F.3d
303, 307 (2d Cir. 2009) ("[A] district court acts properly in
converting a motion for judgment on the pleadings into a motion
for summary judgment when the motion presents matters outside
the pleadings, but the rule requires that the court give
sufficient notice to an opposing party and an opportunity for

25

that party to respond." (internal quotations and citation
omitted)). Finding that Heidelberger presented materials
outside the scope of plaintiff's Amended Complaint in support of
his motion, and noting that, at this stage in the litigation and
with few facts developed, it would be exceedingly difficult for
this Court to determine the seriousness of plaintiff's injury or
his deprivation of medical care, see Rosales v. Fischer, 2009 WL
928260, at *12 (S.D.N.Y. Mar. 31, 2009) ("[G]iven the liberal
construction afforded pro se complaints, determination of
whether an alleged injury is sufficiently serious is often
premature at the pleading stage and better suited to resolution
on summary judgment."), this Court hereby converts
Heidelberger's motion to dismiss to a motion for summary
judgment. See Fed. R. Civ. P. 12(d).

As stated above, when a court converts a motion to dismiss
to a motion for summary judgment, "the rule requires that the
court give sufficient notice to an opposing party and an
opportunity for that party to respond." Hernandez, 582 F.3d at
307 (internal quotation and citation omitted). "In the case of
a pro se party, . . . 'notice is particularly important' because
the pro se litigant 'may be unaware of the consequences of his
failure to offer evidence bearing on triable issues.'" Id.
(quoting Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d
Cir. 1983)). Relatedly, in Irby v. New York City Transit Auth.,

262 F.3d 412 (2d Cir. 2001), the Second Circuit recognized "that district courts and represented litigants who move for summary judgment against pro se parties must provide any pro se party with notice of the requirements of Rule 56 of the Federal Rules of Civil Procedure and 'the consequences of noncompliance' with the rules." Malcolm v. Honeoye Falls-Lima Educ. Ass'n, 2014 WL 2519968, at *1 (W.D.N.Y. Mar. 31, 2014) (citing Irby, 262 F.3d at 413). Since Irby, this district has implemented mandatory summary judgment notice requirements, adopted in our Local Rules of Civil Procedure. See W.D.N.Y. Loc. R. Civ. P. 56(b).

While the Court may excuse the failure to attach an Irby Notice to a motion for summary judgment if the moving party establishes that the pro se litigant clearly understood the requirements of Rule 56, see Irby, 262 F.3d at 414, no such showing has been made here. A review of plaintiff's response in opposition establishes that he did not fully understand the challenges raised in Heidelberger's motion to dismiss, let alone that the motion might be converted into one for summary judgment. See Docket # 80. Accordingly, Heidelberger's converted motion for summary judgment (Docket # 77) is **denied without prejudice to renew** upon the filing of a revised version of his motion papers addressing the surviving issues raised in plaintiff's February 15, 2013 exhausted grievance.

## CONCLUSION

For the reasons stated, Reardon's motion for judgment on the pleadings (Docket # 64) and Stabler's motion for judgment on the pleadings (Docket # 68) are **granted**, and Heidelberger's motion to dismiss (Docket # 77) is **denied without prejudice to renew** as a converted motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both plaintiff and defendant are reminded that, pursuant to the Court's findings in the instant Decision and Order, the only issues remaining for this Court to resolve with respect to plaintiff's claim against Heidelberger for deliberate indifference to his serious medical need are those raised in his February 15, 2013 exhausted grievance. By failing to exhaust the administrative remedies available to him with respect to the issues raised in his June 28, 2013 grievance, plaintiff has forfeited his right to adjudicate them here. Additionally, the Court is attaching to this Decision and Order a copy of the court-required Irby Notice, and defendant is instructed to attach same to his moving papers. Plaintiff is directed to respond to the revised summary judgment motion thirty (30) days after service of the motion papers. Defendant shall have fourteen (14) days to reply. No further discovery shall occur pending a determination of the summary judgment motion. Should plaintiff believe that he is unable to present facts needed to justify his opposition to

28

summary judgment, he must file an affidavit or declaration pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 29, 2016
      Rochester, New York

## PRO SE NOTICE

Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56 of the Local Rules of Civil Procedure. An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.

In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may include plaintiff's own statements, must be in the form of affidavits. Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment. Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant.

Plaintiff is required to file and serve the following papers in opposition to defendant's motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a response to each numbered paragraph in the moving party's statement of material facts not is dispute, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried, followed by citation to admissible evidence. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted.

Plaintiff must serve his/her opposition to defendant's motion no later than the date they are due as provided in Rule 7(b) of the Local Rules of Civil Procedure for the Western District of New York, or in accordance with the Court's briefing schedule. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office. If plaintiff has any questions, he/she may contact the Pro Se Office.