# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

DAMONE TAREE SAVAGE,
          Plaintiff,

          v.

MICHAEL ACQUINO, et al.,
          Defendants.

**DECISION & ORDER**
13-CV-6376-JWF

## Procedural Background

Proceeding *pro se*, plaintiff Damone Savage ("plaintiff" or "Savage"), an individual previously detained at the Erie County Holding Center ("ECHC"), commenced this action against Buffalo Police Department ("BPD") officers and ECHC officials pursuant to 42 U.S.C. § 1983. Am. Compl. (Docket # 7). In his Amended Complaint, plaintiff asserted causes of action against: (1) Officers Michael Acquino ("Acquino") and Mark Hamilton ("Hamilton"), alleging violations of his Fourth Amendment rights; (2) Officers Acquino, Hamilton, Mark White ("White") and Jeremy Connolly ("Connolly") (collectively, "the City Defendants"), alleging violations of his Eighth Amendment rights; and (3) Dr. Edwin Heidelberger ("Heidelberger"), Nurse Guadalupe Stabler ("Stabler"), and Superintendent Michael Reardon ("Reardon"), alleging violations of his Eighth Amendment rights. Id. Stabler and Reardon asserted cross-claims against the City Defendants (Docket ## 16, 17), and the City Defendants asserted cross-claims

1

against Stabler, Reardon and Heidelberger. Docket # 18. Heidelberger asserted a cross-claim against the City Defendants and a counterclaim against plaintiff. Docket # 15. Pursuant to the provisions of 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court for all dispositive matters, including trial. Docket # 46.

Reardon and Stabler moved for judgment on the pleadings (Docket ## 64, 68), and the Court granted those motions on September 30, 2015 (Docket # 84). Heidelberger also moved to dismiss (Docket # 77), which motion the Court denied without prejudice to renew as a converted motion for summary judgment (Docket # 84). The City Defendants discontinued their cross-claims against Reardon and Stabler on December 2, 2016. Docket # 87. Plaintiff's only remaining claims are against (1) Acquino and Hamilton, alleging violations of his Fourth Amendment rights; and (2) the City Defendants, alleging violations of his Eighth Amendment rights.[1]

---

[1] Plaintiff plead the excessive force claim as arising under the Eighth Amendment. Docket # 7, at 11. However, in briefing and oral argument the parties addressed the excessive force claim under the Fourth Amendment. "Eighth Amendment claims of excessive force are normally limited to post-conviction situations, such as an inmate alleging that excessive force was used by corrections officers while the inmate was incarcerated serving a prison sentence. . . . Fourth Amendment claims relate to 'the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard.'" Samuels v. Schultz, No. 11-CV-6255, 2017 WL 1194376, at *4 (W.D.N.Y. Mar. 30, 2017) (quoting Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015)). Since plaintiff's claim arises in the context of an arrest, it is governed by the Fourth Amendment, and

Currently pending before the Court is Heidelberger's motion for summary judgment (Docket # 94) filed on July 7, 2017, and the City Defendants' motion for summary judgment (Docket # 97) filed on August 9, 2017. The defendants move to dismiss all remaining claims against them. The Court set deadlines for responses and replies and plaintiff requested an extension in an effort to retain counsel.

On December 7, 2017, the Court appointed Anna Marie Richmond, Esq., to represent Savage *pro bono*. Docket # 102. Savage, through counsel, responded to the motions on February 16, 2018. He opposed the City Defendants' motion, but consented to dismissal of the claims against Heidelberger. Docket ## 103-108. Accordingly, with plaintiff's consent, Heidelberger's motion for summary judgment (Docket # 94) is **granted**.

Plaintiff also moved for an extension of time to complete discovery from the City Defendants. Docket # 109. The City Defendants replied (Docket # 110), and responded to Savage's motion for an extension of time to complete discovery (Docket # 111) on February 26, 2018. The parties filed supplemental post-argument briefs on March 9, 2018. Docket ## 114, 115.

---

I treat it as such despite reference to the Eighth Amendment in the Amended Complaint.

## Factual Summary

The parties agree that on January 18, 2013 at around 6 p.m., Savage and his cousins Andrez Osborne ("Osborne") and Arquain Reese ("Reese") were walking on East Delavan Avenue near the intersection of Newburgh Avenue in Buffalo, New York. Savage was arrested and during that arrest, Acquino sprayed plaintiff with pepper spray or mace. Acquino and Hamilton summoned additional police help and Connolly and White arrived on the scene. Plaintiff was handcuffed and taken into custody. The parties agree on little else with respect to the January 18th encounter between plaintiff and law enforcement, and indeed, as set forth below, their competing factual assertions pay tribute to the difficulty of resolving this case at the summary judgment stage.

Plaintiff's Version of the January 18th Encounter: Savage insists this case involves an unjustified stop followed by extreme police brutality. According to plaintiff, at around 6:15 p.m. on January 18, 2013, he, Osborne and Reese left plaintiff's aunt's house on Newburgh Avenue to walk to a store on the corner of East Delavan Avenue and Texas Street. Aff. of Damone Taree Savage (Docket # 104-1), at ¶¶ 3-5. The cousins bought snacks, which were placed in small black plastic bags, and began walking back to Savage's aunt's house. Id. at ¶¶ 9-10. On their return, they witnessed two police officers stop a car and order its occupants out at gunpoint. Id. at ¶ 12. Reese and Osborne commented to

4

Savage that they recognized these officers as Acquino and Hamilton (id. at ¶¶ 14-15) and that Reese and Osborne had been harassed by the officers ever since Reese testified on behalf of a friend who was arrested by Hamilton for possession of a gun. Aff. of Arquain Reese (Docket # 106), at ¶¶ 13-15. Savage "glanced briefly" at Acquino and Hamilton "but did not stare at them." Docket # 104-1, at ¶ 17. Hamilton and Acquino pulled up behind the cousins and Hamilton asked Reese and Osborne, "Where the f**k are you two going?" Id. at ¶ 21. The officers threateningly told Reese and Osborne that they "better have some ID on you this time." Id. at ¶ 24. As Reese and Osborne were being detained, plaintiff continued walking around the corner to his great aunt's house, hoping to get her to defuse the escalating situation. Id. at ¶¶ 26-28. Acquino pulled up alongside Savage in his police cruiser and repeatedly told Savage to "Get the F over here." Id. at ¶¶ 31-33.

When plaintiff did not comply, Acquino drove the patrol cruiser over the curb in an attempt to hit plaintiff. Id. at ¶ 37. Savage claims that he "did not drop a holster onto the ground" nor did he "deposit a gun into the bushes on Newburgh Avenue." Id. at ¶ 36. Acquino continued to yell obscenities at plaintiff and then ran up behind plaintiff and jumped on his back, causing both to fall to the ground. Id. at ¶¶ 42-45. At some point, plaintiff dropped the black plastic bag he was carrying. Id. at

5

¶ 46. Savage did not hear Acquino give any commands to stop fighting or submit to an arrest. Id. at ¶ 49. According to Savage, Acquino then punched plaintiff on the side of the head and in the mouth, and repeatedly maced his eyes and mouth without warning. Id. at ¶¶ 50-54. Plaintiff denies striking Acquino, but admits that he tried to protect his face from Acquino's assault. Id. at ¶ 56. Despite Savage's screams, Acquino did not relent. Id. at ¶ 59. Hamilton then joined the fray and tackled and kicked Savage and threatened to break plaintiff's jaw. Id. at ¶¶ 63-66. Hamilton pointed his gun at plaintiff, telling Savage that he would "blow [his] F-ing head off" if plaintiff continued to scream. Id. at ¶ 67. Hamilton or Acquino called for backup. Acquino sat on plaintiff's back and choked him and Hamilton repeatedly hit plaintiff in the face; both of the officers stomped and kicked plaintiff. Id. at ¶¶ 72-74. Connolly and White arrived and joined in kicking and stomping plaintiff, and eventually one of them handcuffed plaintiff by twisting his arms in opposite directions. Id. at ¶¶ 79-81. Even after he was handcuffed and on the ground, the City Defendants continued to stomp and kick Savage's head and mace his face. Id. at ¶ 82-83.

Plaintiff was convicted upon his guilty plea to criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03(3)) in state court. At his plea hearing, Savage indicated that he believed he had received ineffective assistance of counsel.

6

Nevertheless, he felt he "had no choice but to take the plea."
Id. at ¶¶ 106-114.  Represented by new counsel, he appealed his
conviction and sentence.  On March 25, 2016 the New York State
Appellate Division's Fourth Department reversed and vacated
plaintiff's conviction finding that the police lacked "an
objective, credible reason" to justify their initial approach of
and encounter with plaintiff.  People v. Savage, 137 A.D.3d 1637,
1639 (4th Dep't 2016).  Savage was released from state custody on
April 16, 2016.  Docket # 104-1, at ¶¶ 118-20.  DNA tests performed
on the gun allegedly found in the bushes did not conclusively match
plaintiff's DNA.  Docket # 104-9, at 4.

     City Defendants' Version of the Facts:  The City Defendants
describe a completely different encounter with plaintiff.  They
allege that their stop was justified because plaintiff
suspiciously stared at the police and then deposited a gun into
nearby bushes.  They further claim that the force applied to
plaintiff was reasonable in light of plaintiff's violent
resistance to his arrest.

     More specifically, Acquino and Hamilton maintain that they
were engaged in a traffic stop on East Delavan Avenue when they
noticed plaintiff "stare" in their direction.  Aff. of Michael J.
Acquino (Docket # 97-3), at ¶ 6.  Upon completing the stop, Acquino
and Hamilton drove up to Savage to "inquire if he needed help."
Aff. of Mark Hamilton (Docket # 97-4), at ¶ 7.  As the pair

7

approached plaintiff they tried to engage him in conversation but he began to walk away quickly. Id. at ¶ 8. As Savage rounded the corner, Acquino and Hamilton observed Savage touch his waistband, which revealed a gun holster that fell to the ground. Docket # 97-3, at ¶ 8. Plaintiff walked faster down the street and deposited a firearm from his waistband into a nearby bush. Id. at ¶ 9. Acquino ordered plaintiff to stop but plaintiff disobeyed and began running. Id. at ¶¶ 11-12. When Acquino apprehended Savage, plaintiff "became hostile and aggressive" and repeatedly struck Acquino with his arms and legs. Id. at ¶ 12. Acquino applied pepper spray to plaintiff's face after warning plaintiff that he would do so if he continued to resist. Id. at ¶ 12.

Acquino called for Hamilton (id. at ¶ 13), who then radioed for assistance from other officers (Docket # 97-4, at ¶ 14). Hamilton observed plaintiff ignore Acquino's repeated commands, and saw plaintiff punch Acquino and slap his firearm away. Id. at ¶¶ 12-15. Upon arriving, Connolly attempted to restrain plaintiff by pinning plaintiff down with his knee and hand. Aff. of Jeremy W. Connolly (Docket # 97-5), at ¶ 8. White laid on one of plaintiff's arms. Aff. of Mark C. White (Docket # 97-6), at ¶ 7. Eventually, the officers were able to handcuff Savage, who was screaming obscenities at them. Id. at ¶ 9. They do not recall observing any of Savage's injuries at the time. Id. at ¶ 10. The officers aver that they did not use any force beyond what was

8

necessary to subdue the combative plaintiff. Docket # 97-5, at ¶ 9; Docket # 97-4, at ¶ 16; Docket # 97-3, at ¶ 16. After plaintiff was secured, Hamilton assisted other BPD officers in recovering a firearm "in the vicinity of where [he] observed Plaintiff deposit it earlier." Docket # 97-4, at ¶ 18. Acquino, Connolly and White admit that they did not observe the retrieval of the firearm, but they were aware that a gun was found. Docket # 97-3, at ¶ 18; Docket # 97-5, at ¶ 15; Docket # 97-6, at ¶ 13.

## Summary Judgment Standard

Against this backdrop of competing factual narratives, the City Defendants move for summary judgment, arguing that there are no genuine material facts at issue. As always, summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute of fact is material "only if it has some effect on the outcome of the suit." Eagley v. State Farm Ins. Co., No. 13-cv-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). Moreover, a genuine

9

issue exists as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. When deciding a summary judgment motion, courts must resolve all inferences and ambiguities in favor of the party against whom summary judgment is sought. Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The reasonableness of those inferences, though, depends on "the record taken as a whole." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of showing the absence of any issue of material fact rests with the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has established its *prima facie* entitlement to summary judgment, the burden shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (emphasis added) (internal citations and quotation marks omitted). Put differently, the non-moving party must show that materials cited "establish . . . the presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). It is not enough for the non-movant to present evidence that simply raises doubts; the non-movant must present "concrete

10

evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" to support the non-moving party's claims is insufficient to defeat a motion for summary judgment. Id. at 252.

## Discussion

The City Defendants argue that they are entitled to summary judgment because there is no genuine issue of material fact as to plaintiff's false arrest and excessive force claims. First, the City Defendants contend that there is no issue of fact as to whether they had probable cause to arrest Savage, providing a complete defense to the false arrest claim. Alternatively, they argue that they are entitled to qualified immunity because they had "arguable probable cause" to arrest Savage. Finally, they argue that they are entitled to summary judgment on the excessive force claim because the force they used was reasonable or, in the alternative, they are entitled to qualified immunity.

As set forth more fully below, the lawfulness of the City Defendants' conduct cannot properly be decided on summary judgment because there are material unresolved factual disputes in the record before the Court. It is for a jury and not this Court to determine what happened and decide whether plaintiff's claims against the City Defendants have merit.

False Arrest: Federal claims of false arrest implicate the Fourth Amendment right to be free from unreasonable seizures. See

Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991). A federal court analyzing a section 1983 claim alleging false arrest looks to the law of the state in which the arrest occurred. Harris v. City of New York, 222 F. Supp. 3d 341, 349 (S.D.N.Y. 2016). "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (additional internal quotation omitted)).

Acquino and Hamilton plead in their answer that there was probable cause to arrest plaintiff for criminal possession of a weapon, obstructing government administration and resisting arrest, and that they are entitled to qualified immunity. Answer to Am. Compl. (Docket # 18), at ¶¶ 21-22. "Probable cause exists when an officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to

12

be arrested.'" Curley v. Village of Suffern, 268 F.3d 65, 69-70

(2d Cir. 2001) (quoting Martinez v. Simonetti, 202 F.3d 625, 634

(2d Cir. 2000) (additional internal quotation omitted)). Criminal

possession of a weapon in the second degree requires possessing a

"loaded firearm." N.Y. Penal Law § 265.03(3) (McKinney).

Obstructing governmental administration in the second degree

requires that the person "intentionally obstructs, impairs or

perverts the administration of law." N.Y. Penal Law § 195.05

(McKinney). Resisting arrest requires "intentionally prevent[ing]

or attempt[ing] to prevent a police officer or peace officer from

effecting an authorized arrest." N.Y. Penal Law § 205.30

(McKinney).

Typically, probable cause to arrest for one offense will be

a complete defense to an arrest for several offenses, even if

probable cause for those other offenses is lacking. See United

States v. Davis, 111 F. Supp. 3d 323, 332 (E.D.N.Y. 2015) ("An

arrest is constitutionally valid if there is probable cause to

justify the arrest at its initiation, even if the offense providing

probable cause for the arrest is different from the offense

ultimately charged."). But here, the obstruction of governmental

administration and resisting arrest charges presume that the

initial stop from which the alleged resisting and obstruction

flowed, i.e., for possession of a firearm, was authorized.

Therefore, probable cause for resisting arrest will not be a

13

defense if there was no *independent* probable cause to justify the arrest for which the plaintiff is charged with resisting or obstructing.[2] See Jackson v. Tellado, 236 F. Supp. 3d 636 (E.D.N.Y. 2017) (discussing independent probable cause as it relates to resisting arrest and disorderly conduct) (citing Curry v. City of Syracuse, 316 F.3d 324 (2d Cir. 2003)); Johnson v. City of New York, No. 05 Civ. 7519, 2010 WL 907971, at *4 (S.D.N.Y. Mar. 9, 2010) ("Because plaintiff's arrest was unauthorized, it was impossible for the police to have had probable cause to believe that plaintiff was resisting arrest."). That means to be entitled to summary judgment here, Acquino and Hamilton must have had probable cause for the criminal possession of a firearm charge, the stop for which the other charges result.

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852. This is not one of those situations.[3] Instead, there

---

[2] The gun itself, which was allegedly found in the bushes, cannot provide retroactive probable cause for plaintiff's arrest. Regardless of whether the "arrest" is defined as the initial stop of plaintiff or when he was placed in handcuffs, the gun was located at some later point. As Savage correctly states in his supplemental letter brief, "'[t]he relevant time for the purposes of a false arrest claim is the time of the arrest.'" Docket # 115, at 2 (quoting Mejia v. City of N.Y., 119 F. Supp. 2d 232, 252-53 (E.D.N.Y. 2000)).

[3] Ordinarily, "[w]hen a Section 1983 plaintiff is convicted after trial on the underlying charge . . . or when a plaintiff pleads guilty to the underlying or a lesser charge . . . these facts *alone* provide sufficient evidence that probable cause existed at the time of the arrest and preclude a false arrest claim under Section 1983." Feurtado v.

14

are serious factual questions about whether Acquino and Hamilton
had probable cause to arrest plaintiff for criminal possession of
a firearm.   The City Defendants have submitted sworn affidavits
maintaining that they had probable cause to stop plaintiff because
he stared in their direction and, in plain sight, deposited a
firearm into the bushes.   Docket # 97-3, at ¶¶ 6, 8.   Plaintiff
completely refutes these assertions in his sworn affidavit,
stating that he never stared in the officers' direction and never
deposited a firearm in the bushes.   Docket # 104-1, at ¶¶ 17, 36.
Such factual discrepancies inevitably call for credibility
determinations inappropriate for summary judgment. Rule v. Brine,
Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of
credibility and choices between conflicting versions of the events
are matters for the jury, not for the court on summary judgment.")
(citations omitted).

Gillespie, No. 04CV3405, 2005 WL 3088327, at *5 (E.D.N.Y. Nov. 17, 2005)
(emphasis in original); see Hayes v. County of Sullivan, 853 F. Supp.
2d 400, 428 (S.D.N.Y. 2012) (citing cases).   But if, as here, "the
conviction has been reversed on appeal, the conviction 'is no evidence
of the existence of probable cause,' and the reversal is itself
admissible to challenge the justification for the arrest."   Boley v.
Durets, No. 12-CV-4090 ARR JO, 2013 WL 6562445, at *3 (E.D.N.Y. Dec. 10,
2013) (denying motion to dismiss on grounds that reversal of conviction
on appeal did not establish conclusive evidence of probable cause to
arrest on false arrest claim) (quoting Weyant, 101 F.3d at 852).   In
fact, in the appeal of plaintiff's criminal charges, the Fourth
Department held that the officers' initial stop of plaintiff was not
justified.   Savage, 137 A.D.3d at 1639 (finding that "merely staring at
or otherwise looking in the direction of police officers" was
insufficient to provide an "objective, credible reason" to initiate a
stop of plaintiff).

15

Alternatively, Acquino and Hamilton assert that they are entitled to qualified immunity on the false arrest claim because there was "arguable probable cause" to arrest Savage. Docket # 97-7, at 7-9. This is a closer call. "The doctrine of '[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" Rogoz v. City of Hartford, 796 F.3d 236, 247 (2d Cir. 2015) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). A defendant's motion for summary judgment "should be granted if either the evidence, viewed in the light most favorable to the plaintiff, is insufficient to establish the violation of a statutory or constitutional right, or if that right was not clearly established at the time of the alleged violation." Soto v. Gaudett, 862 F.3d 148, 156 (2d Cir. 2017). "[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness" of a police officer's use of force under the Fourth Amendment. Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001) (internal quotation and citation omitted).

Acquino and Hamilton do not dispute that plaintiff's right to be free from unreasonable search and seizures was clearly established at the time of the arrest. Instead, the parties dispute whether Acquino and Hamilton's actions were objectively

16

reasonable in light of the circumstances or whether officers of reasonable competence could disagree on whether probable cause was met. In arguing in the affirmative, Acquino and Hamilton ask the Court to assume as true *their* version of the events, i.e., that they saw plaintiff retrieve what they believed to be a loaded firearm. Reply (Docket # 110), at 6; Suppl. Br. (Docket # 114), at 3. They maintain that the Court must look to "'the information reasonably available to the arresting officer at the time of the arrest, not on the basis of what the arrested party believed to be happening.'" Docket # 110, at 5 (quoting Lowth v. Town of Cheekotwaga, 82 F.3d 563, 570 (2d Cir. 1996)).

But the issue here is exactly what information was "reasonably available" at the time of the arrest. It is impossible for me to find in the City Defendants' favor unless I credit their story as true. Viewing the facts in the light most favorable to *plaintiff* and resolving all inferences in his favor, as the Court must, it is clear that there are genuine issues of material fact as to whether Acquino and Hamilton *reasonably believed* that there was probable cause to arrest plaintiff or whether officers of *reasonable competence* could disagree on whether the probable cause test was met. This is so because the parties disagree fundamentally on what the facts are. As discussed above, Acquino and Hamilton say they believe plaintiff threw a gun but plaintiff maintains he never had a gun. Whether plaintiff had a gun - or

17

whether Acquino and Hamilton truly believed he had a gun - is material to a determination of reasonableness of a police officer's use of force under the Fourth Amendment. Compare Burbar v. Village of Garden City, 961 F. Supp. 2d 462, 469 (E.D.N.Y. 2013) (finding officers entitled to qualified immunity on arguable probable cause grounds where it was *undisputed* that plaintiff had a gun).

This case is unlike the cases Acquino and Hamilton rely on in their reply for the proposition that summary judgment is warranted where police observed what they thought was a weapon. In Markman v. City of New York, 629 Fed. App'x 119 (2d Cir. 2015), the Second Circuit found that police officers had arguable probable cause to believe that the plaintiff had possession of a loaded weapon even though he had called to voluntarily surrender a weapon and would thus qualify for an innocent-possession exemption. Similarly, in Levy v. City of New York, the Second Circuit held that police officers were entitled to qualified immunity for arresting plaintiff for possession of a weapon because they knew that plaintiff had a knife and had made a threat, even though in retrospect he was likely justified in doing so.

This case is different. In Markman and Levy, the parties agreed on the facts leading up to the arrest, but disagreed about whether those facts supported a finding of probable cause. In contrast, here, plaintiff and defendants disagree as to virtually every fact leading up to the arrest, *as well as* whether there was

18

probable cause to conclude that plaintiff committed an arrestable offense. Acquino and Hamilton argue that their basis for probable cause was that they saw plaintiff with a gun, but plaintiff submits that they could not have seen a gun because there was in fact no gun. If Acquino and Hamilton's reasons for stopping Savage are, as Savage contends, false and pretextual, they could not have reasonably believed that the stop was justified.

To find that Acquino and Hamilton are entitled to qualified immunity would require "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts [that] are matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994). Accordingly, Acquino and Hamilton, the nonmoving parties, have not established that there is no genuine issue of material fact as to whether they *reasonably* believed they had probable cause to arrest plaintiff.

Excessive Force: The elements of a claim for excessive force in violation of the Fourth Amendment are well established:

> The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest. . . . Because the Fourth Amendment test of reasonableness is one of objective reasonableness, . . . the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. . . . In conducting that balancing, we are guided by consideration of at least three factors: (1) the nature and severity of the

crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (internal quotations and citations omitted). Where, as here, evaluation of these factors requires credibility assessments and weighing evidence, summary judgment is not appropriate. Curry, 316 F.3d at 333. The parties not only offer entirely different accounts of how much force was used and by whom, they also disagree as to whether there was an underlying crime at all. Therefore, there are genuine issues of material fact on the excessive force claim that preclude summary judgment.

Similar to their arguments on plaintiff's false arrest claim, the City Defendants' argue that they are entitled to qualified immunity on plaintiff's excessive force claim. Excessive force claims frequently involve factual disputes that make them difficult to resolve pursuant to summary judgment. These inherent factual disputes often infect the qualified immunity analysis, as well. The Second Circuit has explained that in cases alleging excessive force, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002)

20

(internal quotation marks omitted); see also Benson v. Yaeger, No. 05-CV-784S, 2009 WL 1584324, at *7 (W.D.N.Y. June 3, 2009) ("[T]he only issue [to determine in assessing qualified immunity] is whether the Officers' conduct was objectively reasonable — the very question upon which this Court has found there are genuine issues of material fact."); Houghton v. Culver, 452 F. Supp. 2d 212, 221 (W.D.N.Y. 2006) (stating in an excessive force case, "[i]f the facts about what happened are in dispute, summary judgment [on qualified immunity grounds] is inappropriate").

Here, the parties dispute almost every material fact relevant to determining whether the City Defendants' use of force was reasonable. To be sure, the City Defendants admit that they used force in arresting plaintiff, but they say that they used no more force than was "necessary." Docket # 97-3, at ¶ 16; Docket # 97-4, at ¶ 16; Docket # 97-5, at ¶ 9. Indeed, they argue that the force they used was in response to Savage becoming "hostile and aggressive" and repeatedly striking the City Defendants. Docket # 95-3, at ¶ 12. Acquino only used pepper spray after plaintiff ignored Acquino's warnings and refused to cooperate. Docket # 97-5, at ¶ 8. And White and Connolly pinned plaintiff down because plaintiff was violently resisting arrest. Docket # 97-6, at ¶ 7.

Plaintiff, on the other hand, maintains that the police were the aggressors and that he simply sought to defend himself from their unprovoked and disproportionate attacks. He asserts that he

21

never struck Acquino and simply tried to defend himself as Acquino attempted to run over plaintiff, jumped on his back, punched him in the mouth, maced him without warning and threatened to kill him. Docket # 104-1, at ¶¶ 42-59. Similarly, he claims that Hamilton sat on plaintiff's back and choked him and that White and Connolly twisted plaintiff's arms and kicked him while he was on the ground. Id. at ¶¶ 63-83.

The City Defendants correctly assert that they are entitled to qualified immunity "'if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context.'" Docket # 97-7, at 10 (quoting Crowell v. Kirkpatrick, 400 Fed. App'x 592, 594 (2d Cir. 2010)). But, as described above, the parties strenuously disagree about the degree of the underlying "action[s] at issue" and their "particular factual context." In other words, the fact questions relate not only to whether the appropriate amount of force was used but also to what was happening "'on the scene at the moment the force is used.'" Brown v. City of New York, No. 13-CV-1018 (KBF), 2016 WL 1611502, at *6 (S.D.N.Y. Apr. 20, 2016), aff'd, 862 F.3d 182 (2d Cir. 2017) (quoting Rogoz, 796 F.3d at 246-47).

The conflicting accounts as to what was happening on the scene – who initiated the force and why, how much force was used and whether that use was reasonable – are genuine material factual issues that preclude summary judgment on qualified immunity

22

grounds. Determining whether the City Defendants' conduct was objectively reasonable would require that the Court evaluate credibility and weigh evidence, matters that are reserved to the jury. See Robinson v. Via, 821 F.2d 913, 924 (2d Cir. 1987). Without such an analysis, it is impossible to determine whether the City Defendants reasonably believed that the force they used was not excessive. Accordingly, summary judgment must be denied.

Discovery Motion: Along with plaintiff's opposition to the instant motions for summary judgment, Savage filed a motion to extend his time to complete discovery from the City Defendants. Docket # 109. Savage contends that on July 17, 2015, while *pro se*, he filed a discovery request which he titled "Interrogatories and Request for Production of Documents." Aff. in Supp. of Mot. to Extend Disc. (Docket # 109), at ¶ 8. On July 13, 2015, counsel for the City Defendants advised plaintiff that his request exceeded the 25-interrogatory limit of Fed. R. Civ. P. 33(a)(1), by propounding approximately 84 interrogatories. Plaintiff claims he never received this letter. Id. at ¶ 23. Although some of the discovery requests were interrogatories, others were document requests that should not have counted toward the 25-interogatory limit. Even then, Fed. R. Civ. P. 33(a) allows 25 interrogatories *per defendant* and there are four City Defendants here. Id. at ¶ 20. Additionally, plaintiff directed fewer than 25 interrogatories to Connolly and White. Id. at ¶ 22. Savage

23

contends that he never received any responses to his discovery requests and that the City Defendants never filed their initial disclosures with the Court. He proposes that the Court allow plaintiff 120 days to obtain discovery. Id. at 34 et seq. The City Defendants object, arguing correctly that time to conduct discovery has long passed and was never timely extended. Opp. to Mot. to Extend Disc. (Docket # 111), at 2-3.

I find a brief period of time to allow plaintiff to receive this responsive information is warranted. Therefore, plaintiff shall have 30 days from the date of this Decision & Order to re-serve any interrogatories to the City Defendants (limited to 25 questions per defendant, inclusive of sub-parts) and the City Defendants shall have 45 days thereafter to respond. Once the interrogatory answers have been served, discovery shall close and the case will be scheduled for a jury trial.

## Conclusion

For the foregoing reasons, Heidelberger's motion for summary judgment (Docket # 94) is **granted** and the City Defendants' motion for summary judgment (Docket # 97) is **denied**. Plaintiff's discovery motion (Docket # 109) is **granted in part** and **denied in part**.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   March 23, 2018
         Rochester, New York

24